

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Sam H. Davidson
County Attorney
Hockley County
Levelland, Texas

Dear Sir:

Opinion No. 0-5339
Re: Construction of those por-
tions of standard delin-
quent tax collection con-
tract relating to commis-
sions of tax attorney.

From your recent letter we summarize the following facts as the bases of this opinion:

On January 13, 1941, the Commissioners' Court of Hockley County and a local attorney entered into a contract for the collection of delinquent taxes. The contract followed the standard form prescribed by the Comptroller and was to terminate on December 31, 1942. Four months prior to the termination of the contract the tax attorney moved from Hockley County, and, subsequent to his removal, he failed each month to file with the tax collector the records, copies of communications, notices, etc., required by the contract to be so filed. Because of such failure the tax collector neither paid the tax attorney commissions on taxes collected during such months nor did he place any sum in escrow to represent the amount of such commissions. The tax collector in question has filed his monthly report for each of such months, and has filed and had accepted his annual report for 1942, and has turned his office over to his successor. The tax attorney now seeks commissions for the last four months of the contract.

You inquire:

"1. Is the action of the former Tax Collector in not paying the commissions for the last four months of the contract conclusive, or would the

Honorable Sam H. Davidson, page 2

Commissioners' Court, if said Court were convinced the claim were just and unpaid, have authority to revise the acts of the Tax Collector after the expiration of the Contract?

"2. If said Commissioners' Court were authorized and saw fit to allow the claim, what would be the correct procedure for paying said claim on the commissions for the county as well as State Delinquent Taxes upon which claim is based?"

The contract in question provides, inter alia:

"Clause VIII. First Party agrees to pay to Second Party as compensation for the services hereunder required 7½ per cent (not to exceed fifteen (15) per cent) of the amount collected of all delinquent taxes, penalty and interest of the years covered hereby, actually collected and paid to the collector of taxes during the term of this contract, of which Second Party is instrumental in collecting as evidenced by copies of communications, tax notices or abstracts filed with the tax collector prior to the payment of such tax, including collection of taxes on property not appearing on the assessment rolls nor shown delinquent but which would have been so shown had it been properly assessed, discovered by said Second Party, as and when collected, following the end of each month within the period of this contract, accordingly as the collector makes up his monthly reports; . . . .

"  . . . .

"Clause XI. At the end of each month, or as soon thereafter as the tax collector shall have made up his report showing collections made for such month, said Second Party shall have access to said report and shall by comparison of the same with his own files or record of service, copies of which he has filed with the tax collector, make up in triplicate a report of collections out of which he is entitled to commission under the terms of this contract. Second Party shall also have access to the collector's receipts for such collections and shall, in his reports to be made on forms furnished

Honorable Sam H. Davidson, page 3

by the Comptroller, show each year and the taxes collected therefor on a separate line. . . . After the report has been signed and sworn to by Second Party, two copies of the same shall be delivered to the Tax Collector, one to be attached to and sent with the Collector's monthly report to the Comptroller, the other filed in the Collector's office, and the third copy to be retained by the Second Party.

"Clause XII. Each month, after having received copies of the contractor's report as provided for in the preceding section, and checked the list of taxes shown therein with his own report and with copies of communications filed with him, as provided for in Section XIII of this contract, and after having verified the correctness of commissions claimed, the county tax collector is hereby authorized ordered and directed to deduct the above specified per cent of said taxes, penalty and interest, or such amount as can be allowed under the penalty and interest restriction, to which Second Party is entitled, and to pay the same to him, unless otherwise herein directed and to take his receipt as provided for on Form 107, Contractor's Report, which when received in the Comptroller's office will be the Comptroller's authority to allow the said tax collector credit for the amount so paid; provided, that the tax collector before complying with the provisions of this section shall first satisfy himself that the bond required of Second Party under the provisions of Section X of this contract has been approved and placed on record in the office of the county clerk; and it is here further provided, that should any question arise regarding commission claimed the tax collector shall withhold the payment of such commission or an amount equal thereto, placing the same in escrow, and apply to the State and county, accordingly as they may be effected, for information and direction as to the proper amount of commission due to be allowed under the terms of this contract.

"Clause XIII. In order that the tax collector may be able to verify and attest the correctness of commissions claimed by Second Party, as evidence

708

Honorable Sam H. Davidson, page 4

of service and to entitle him to the commissions provided for in this contract, Second Party shall file with the tax collector prior to time of payment, copies of such communications, tax notices or abstracts which shall be preserved by the tax collector in some systematical order as will make them easily accessible for the purpose of verification or for some other value as the same may have in case it becomes necessary for the county and State to buy in such properties at tax sales, said copy or copies shall also contain such information or reference as will enable the tax collector to readily locate the tax as it appears on his delinquent forms and/or delinquent records."

Under the terms of the contract the filing of monthly reports by the tax attorney is expressly made a condition precedent to his receiving compensation, for the tax collector is "authorized, ordered and directed" to deduct the attorney's commissions from the tax receipts only "after having received copies of the contractor's report." Moreover, Clause XIII embodies still another such condition by stating that "to entitle him to the commissions provided for in this contract, Second Party shall file with the tax collector prior to time of payment, copies of such communications, tax notices or abstracts. . . ." Also, as a practical matter, it is only after the tax attorney has filed the required information that the tax collector and the Comptroller are able to ascertain the proportion of the total tax collections which the attorney has been instrumental in obtaining, and the nature and amount thereof. Finally, until this information is received, the tax collector has no basis for ascertaining what amount, if any, should be placed in escrow pending the solution of any dispute which might arise in connection with the commissions.

Since the tax attorney failed to fulfill these conditions for the last four months of the contract, we are of the opinion that your tax collector was correct in failing to pay commissions for this period. We are further of the opinion that with respect to the performance of these conditions time is of the essence, and that such conditions cannot now be satisfied. We quote from 3 Williston on Contracts, § 846:

"When it is said that time is of the essence, the proper meaning of the phrase is that the performance by one party at the time specified in the

5

contract or within the period specified in the contract is essential in order to enable him to require performance from the other party."

In 10 Tex. Jur., § 239, p. 417, the author states:

"Whether or not time is of the essence of a contract depends upon the intention of the parties. The question is resolved upon consideration of the language used and the attendant circumstances. Ordinarily time is not of the essence and an intention to make it so must be clearly manifested."

We feel that such a manifestation is present in the instant contract. In both Clause VIII and Clause XIII we find the requirement that copies of communications, tax notices or abstracts be filed "prior to the payment of such tax," while in Clause XI we find the further requirement that the tax attorney's monthly report be compiled and delivered "at the end of each month, or as soon thereafter as the tax collector shall have made up his report showing collections made for such month." Implicit in these requirements and explicit in the language employed is the fact that tardy conformance therewith would disrupt and to a large extent thwart the entire scheme established by the contract for the ascertaining and deducting of the attorney's commissions.

Moreover, under this contract the attorney's commissions were 7½ per cent "of the amount collected of all delinquent taxes, penalty and interest of the years covered hereby, actually collected and paid to the collector of taxes during the term of this contract." Clearly under this provision and under the remainder of the contract it was contemplated that such commissions be paid and deducted from the tax moneys actually received as a result of the attorneys efforts. Article 7335, V. A. C. S., Morrison v. Lane, 157 S. W. (2d) 466 (Civ. App. 1941). The ascertaining of such moneys, the authority for the deductions therefrom, and the obtaining of credit for the deduction from the State's share of such funds all are expressly predicated upon the tax attorney's performance in a timely fashion of those conditions which the contract made a prerequisite to his receiving compensation. His failure to perform such conditions makes it impossible now to adhere to the terms of the contract by compensating him from the tax receipts for whose collection he might have been responsible, since such receipts have long since been reported by the tax collector and transmitted to the appropriate State and county funds.

Honorable Sam H. Davidson, page 6

Moreover, even if this had not occurred, it would now be possible to ascertain the taxes collected by the attorney since no copies of notices, etc., have been filed to make possible such ascertainment, while to allow such notices to be filed at the present time would be to open the door to which the contract sought to prevent -- the filing of purpo ed notices and communications to those persons who had alrea paid their taxes. Finally, the contract itself contained an express termination date, December 31, 1942; the presence of such a date evidences the intention of the parties and provided ample notice to the attorney that all acts required to be done thereunder should be completed at that time. Consequently, we feel that the intention of the parties and the circumstances attendant to the formation and operation of the contract compel the conclusion that time was of the essence with respect to the performance of the conditions relating to the compensation of the tax attorney.

Since the tax attorney has never satisfied such conditions and is now precluded from satisfying them, it follows that he has not and cannot obtain a legally enforceable claim against Hockley County with respect to the commissions which he seeks. This being so, the county auditor cannot approve such claim (Articles 1660 and 1661, R. C. S.) and the commissioners' court is without jurisdiction to order its approval. Cameron County v. Fox, 2 S. W. (2d) 433 (Com. App.); Howard v. Henderson County, 116 S. W. (2d) 479 (Civ. App.). This conclusion makes unnecessary an answer to your second question.

Trusting that the foregoing fully answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By R. Dean Moorhead
                    R. Dean Moorhead
                    Assistant

APPROVED JUN 9, 1943

FIRST ASSISTANT
ATTORNEY GENERAL

RDM:db

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE